IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge John L. Kane

Civil Action No. **10-cv-1303**

**THE STATE OF COLORADO**, through the TRUSTEES FOR NATURAL RESOURCES DAMAGES FOR THE STATE OF COLORADO and ATTORNEY GENERAL JOHN SUTHERS,

        Plaintiff,

v.

**THE CITY AND COUNTY OF DENVER;**
**WASTE MANAGEMENT OF COLORADO, INC.;**
**CHEMICAL WASTE MANAGEMENT, INC.;**
**MOLSON COORS BREWING COMPANY;**
**ROCHE COLORADO CORPORATION;**
**THE S.W. SHATTUCK CHEMICAL COMPANY, INC.;**
**CONOCOPHILIPS COMPANY;**
**THE GATES CORPORATION;**
**ALUMET PARTNERSHIP;**
**SHELL OIL COMPANY;**
**HAZEN RESEARCH, INC.;**
**CYPRUS AMAX MINERALS COMPANY;**
**METRO WASTEWATER RECLAMATION DISTRICT, COLORADO;**
**CITY OF LITTLETON, COLORADO;**
**CITY OF ENGLEWOOD, COLORADO;** and
**CITY OF LAKEWOOD, COLORADO;**

        Defendants.

---

**MEMORANDUM OPINION AND ORDER**

---

**Kane, J.**

      The State of Colorado commenced this action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, seeking damages for injury to natural resources caused by the release of hazardous

1

substances at the Lowry Landfill Superfund Site. The complaint alleges that, as a result of the release of these hazardous substances, groundwater, a natural resource of the State, has been and continues to be injured.

On June 4, 2010, the same day the complaint was filed, the State lodged with the court two proposed consent decrees which would resolve the claims against Defendants for natural resource damages relating to the Lowry Landfill Superfund Site: the Consent Decree for Generator Defendants[1] (Doc. 2-3) and the Performing Parties Consent Decree[2] (Doc. 2-4). Notice of the decrees was published in both the *Denver Post* and the *Aurora Sentinel*, and the State received public comment from three parties: Lynn Robbio Wagner, Environmental Health Field Supervisor for Tri-County Health Department ("TCHD"); b) Bonnie L. Rader, Director for Citizens for Lowry Landfill Environmental Action Now ("CLLEAN"); and c) Adrienne Anderson for CO WATCH.

On August 18, 2010, the State requested that I approve the consent decrees and filed an Unopposed Motion (Doc. 4) to that end. For the reasons explained below, the Motion is GRANTED and the consent decrees are APPROVED.

---

[1] This proposed consent decree would resolve the State's claims for natural resouce damages resulting from contamination at the Lowry Landfill against Molson Coors Brewing Company; Roche Colorado Corporation; the S.W. Shattuck Chemical Company, Inc.; ConocoPhilips Company; the Gates Corporation; Alumet Partnership; Shell Oil Company; Hazen Research, Inc.; Cyprus Amax Minerals Company; Metro Wastewater Reclamation District, Colorado; City of Littleton, Colorado; City of Englewood, Colorado; and City of Lakewood, Colorado.

[2] This proposed consent decree would resolve the State's claims for natural resouce damages resulting from contamination at the Lowry Landfill against the City and County of Denver; Waste Management of Colorado, Inc.; and Chemical Waste Management, inc.

## BACKGROUND

The Lowry Landfill Superfund Site is located in an unincorporated area of Arapahoe County, Colorado. Located on the former Lowry Bombing Range, the federal government conveyed the site to the City and County of Denver in 1964, and from 1965 to 1980 it served as the principal industrial and municipal waste landfill for the Front Range of Colorado. It operated solely as a solid waste disposal site from 1980 until 1990, when it was operated by Waste Management of Colorado, Inc.

Pursuant to 42 U.S.C. 9605(a)(8)(B), the Lowry Landfill was listed on the EPA's National Priorities List in 1984. *See* 49 Fed. Reg. 37083 (September 21, 1984). According to EPA estimates, more than 138 million gallons of industrial and other wastes were disposed of at the Lowry Landfill. An indeterminate amount of this waste consisted of hazardous substances which contaminated the groundwater, surface water, soils, and sediments in and adjacent to the Lowry Landfill. As part of its investigation, the EPA identified numerous potentially responsible parties, including the Generator Defendants and Performing Parties identified in these decrees. Under the active oversight of the EPA and the State of Colorado, remediation of this contamination is ongoing and is expected to continue for many years.

Despite these remediation efforts, the groundwater under the landfill area continues to contain hazardous substances in quantities that exceed drinking water standards established for Colorado. In 2009, the State, acting through the Natural Resource Trustees, notified the Defendants that, pursuant to 42 U.S.C. § 9607(f), it intended to recover damages for injuries it alleged to Colorado Natural Resources related to the Lowry Landfill. This effort culminated in the simultaneous filing of the pending civil complaint and the proposed consent decrees.

## JURISDICTION AND VENUE

Plaintiffs have filed claims under 42 U.S.C. § 9607. Accordingly, jurisdiction in this court is not only proper, it is mandatory. 42 U.S.C. § 9613(b); *see also* 28 U.S.C. § 1331. Furthermore, because the alleged release and resultant damages occurred in this district, venue in this court is also proper. *Id.*; *see also* 28 U.S.C. § 1391(b) and (c).

## DISCUSSION

### *Proposed Consent Decree for Generator Defendants*

Plaintiff filed a Proposed Consent Decree which would absolve the Generators (and their successors in interest) from all past, present, and future claims (known and unknown) arising from "Natural Resource Damages"[3] relating to their generation of waste disposed of in the Lowry Landfill. As part of this proposed consent decree, the Generator Defendants agreed to pay $1,029,702 into a Natural Resources Damage Recovery Fund to be "used only to restore, replace, or acquire the equivalent natural resources asserted to be injured, destroyed, or lost that are related to the Lowry Landfill." Proposed Consent Decree for Generator Defendants (Doc. 2-3) at 10. The Generator Defendants also agreed to pay a fee of $77,228 to be used to reimburse the State Treasury for all assessment costs, with any excess going to the above described Natural Resources Damage Recovery Fund. The Proposed Consent Decree allocated financial liability

---

[3] The proposed consent decree defined "Natural Resource Damages" as "any damages recoverable by the Trustees and the State on behalf of the public for injury to, destruction of, or loss or impairment of Colorado Natural Resources resulting, in whole or in part, from a release of hazardous substances at, on, from or related to Lowry Landfill, including but not limited to past, present, and future: (i) costs of planning restoration activities; (ii) cost of restoration, rehabilitation, or replacement of injured or lost natural resources or of acquisition of equivalent resources; (iii) assessment costs; and (iv) compensation for injury, destruction, loss, impairment, diminution in value, or loss of use of natural resources." It also incorporated by reference the categories of recoverable damages described in 43 C.F.R. § 11.15.

4

among the thirteen Generator Defendants based on their volumetric share of the waste disposed of in the Lowry Landfill. *See* Exhibit A to the Notice of Lodging of Proposed Consent Decrees (Doc. 2-1).

*Proposed Performing Parties Consent Decree*

Plaintiff also filed a similar Proposed Consent Decree releasing the Performing Parties (and their successors in interest) for any past, present, or future claims (known and unknown) or liability for "Natural Resource Damages"[4] related to the Lowry Landfill. Under the terms of the proposed consent decree, the Performing Parties would be required to pay the sum of $500,000 into the Natural Resource Damage Recovery Fund to be "used only to establish or supplement an existing revolving loan fund or funds that will provide no- or low-interest loans to households with a demonstrated financial need for the repair of private residential sanitary sewer failures, for the purpose of improving water quality in the South Platte River watershed." Proposed Performing Parties Consent Decree (Doc. 2-4) at 7.

*Public Comments on the Proposed Consent Decrees*

Three parties submitted comments in response to the publication of the proposed consent decrees: Tri-County Health Department ("TCHD"), CO WATCH, and Citizens for Lowry Landfill Environmental Action Now ("CLLEAN").

**Comments of TCHD**

Lynn Robbio Wagner submitted comments on behalf of the Tri-County Health Department. TCHD expresses concern that limiting the use of the fund established by the Performing Parties Consent Decree to providing loans to households in the South Platte River

---

[4] *See supra* n. 3.

watershed would preclude its use for equally necessary and valuable improvements. In order to alleviate this concern, TCHD suggested the fund's approved uses be extended to private and commercial entities using Individual Sewage Disposal Systems. The parties agreed this change would further the goals of the settlement agreement, and they amended the Performing Parties Consent Decree to reflect this change. TCHD also expressed concern that the fund would only be available to entities within the Denver city limits. The parties addressed this concern by amending the Proposed Consent Decree to include areas within Denver and Arapahoe Counties for which the Colorado Water Quality Control Commission has established a Total Maximum Daily Load for *E. Coli.*

**Comments of CO WATCH**

Adrienne Anderson submitted comments on behalf of CO WATCH. In large part, these comments focus on an alleged cover-up of the presence of elevated levels of plutonium and other radioactive wastes at the Lowry Landfill. CO WATCH claims the parties to these consent decrees have been complicit in a decades-long effort to "deny and blunt public knowledge of the extensive contamination of the aquifer systems beneath the Lowry Landfill with plutonium and numerous other special nuclear wastes." CO WATCH Objections to Lowry Landfill Proposed Settlements (Doc. 4-4) at 2. More relevant to these proceedings, CO WATCH argues the natural resource damages related to the Lowry Landfill extend far beyond the area addressed in the Proposed Consent Decrees. Specifically, CO WATCH alleges "the issuance of permits for discharge of Lowry's dangerous contaminated water has widened the area of actual and potential future natural resource damages to the entire Denver and Aurora metropolitan area and points beyond in Colorado where these pollutants are being dispersed." *Id.* at 4. As a result, CO

6

WATCH argues the Proposed Consent Decrees are wholly inadequate.

Plaintiffs discount these concerns, citing studies and tests revealing that radionuclide levels in the groundwater at the Lowry Landfill do not exceed relevant standards either before or after treatment at the on-site treatment plant. They also cite an EPA study that determined that the biosolids resulting from treatment of the contaminated groundwater "contain no detectable plutonium . . . ." Unopposed Motion to Enter Consent Decrees (Doc. 4) at 11. Perhaps most significantly, Plaintiff notes it "does not have evidence to support a claim of radionuclides in quantities that would injure groundwater at Lowry Landfill or on which to base a natural resource damage claim." *Id.*

## Comments of CLLEAN

Bonnie L. Rader submitted comments on behalf of Citizens for Lowry Landfill Environmental Action Now. These comments focus on a 1,4-dioxane plume extending two miles to the north of the Lowry Landfill site containment boundary. According to CLLEAN, there is insufficient information on the impact of this 1,4-dioxane plume and, thus, it is impossible to determine whether the Proposed Consent Decrees adequately address natural resource damages.[5] Plaintiff acknowledges the validity of these concerns, but insists it included injuries associated with 1,4-dioxane plume in its claim for damages. Furthermore, Plaintiff rebuffs CLLEAN's concerns relating to insufficient information, relying on the Environmental Protection Agency's expertise and ongoing monitoring to ensure contaminants are effectively contained. Notably, Plaintiff acknowledges that while it could spend "many more years and

---

[5] CLLEAN also argues the existence of the plume constitutes evidence that the containment remedy is not functioning properly. As Plaintiff notes, however, its Natural Resource Damages claim is separate from the ongoing remedy.

many more dollars in perfecting the information on which to base its claim, . . . it must balance any uncertainties against its responsibility to gain compensation for the public." Unopposed Motion to Enter Consent Decrees (Doc. 4) at 8.

*Evaluation of Proposed Consent Decrees*

I must balance a number of competing concerns in reviewing the propriety of the proposed consent decrees. On one hand, I am mindful that it is the policy of the law to encourage settlements. This policy has even more force where "a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement." *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990). On the other hand, I may not "merely imprint [the parties'] decision as though possessed of a clerical rubber stamp." *United States v. Telluride Co.*, 849 F. Supp. 1400, 1402 (D. Colo. 1994). "Parties to a lawsuit may always compromise their dispute. But where the parties wish to incorporate their settlement into a judicial decree – where they seek the imprimatur of judicial approval – the court must give the agreement more scrutiny." *Sierra Club v. Coca-Cola Corp.*, 673 F. Supp. 1555, 1557 (M.D. Fla. 1987). In suits affecting the public interest, my review is even more searching. *See Janus Films, Inc. v. Miller*, 801 F.2d 578, 582 (2d Cir. 1986); *Friends of the Earth v. Archer Daniels Midland Co.*, 780 F. Supp. 95, 99 (N.D.N.Y. 1992).

Nevertheless, I do not substitute my judgment of what constitutes an appropriate settlement or attempt to reform the decree. *Telluride Co.*, 849 F. Supp. at 1402 (citing *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1409 (6th Cir. 1991)). The relevant standard is whether the proposed decree is fair, reasonable, and equitable and does not violate law or public policy. *Id.* This standard is not a mere tautology; in this context these words have

specific legal connotation. Fairness incorporates both procedural and substantive components. "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Cannons Eng'g*, 899 F.2d at 86. Substantive fairness flows from procedural fairness. "To the extent that the process was fair and full of 'adversarial vigor,' the results come before the court with a much greater assurance of substantive fairness." *Id.* at 87 n.4 (quoting *City of New York v. Exxon Corp.*, 697 F. Supp. 677, 693 (S.D.N.Y. 1988)). A consent decree that is substantively fair incorporates "concepts of corrective justice and accountability: a party should bear the cost of harm for which it is legally responsible." *Id.* at 87. Substantive fairness thus mirrors the requirement that the decree be equitable.

Likewise, "the evaluation of a consent decree's reasonableness will be a multifaceted exercise." *Id.* at 89. At least two factors are relevant in discerning whether the decrees are reasonable: (1) whether they will sufficiently compensate the public for the costs of remedial measures, and (2) whether they reflect the relative strength or weakness of the State's case against Defendants. *Id.* at 90. Overlaid on this evaluation is the most important factor: whether the consent decrees are in the public interest and uphold the objectives of CERCLA's resource damage provisions , chief among which is the "restoration or replacement of natural resources damaged by unlawful releases of hazardous substances." *New Mexico v. General Elec. Co.*, 467 F.3d 1223, 1245 (10th Cir. 2006); *see also Akzo Coatings*, 949 F.2d at 1435 ("Protection of the public interest is the key consideration in assessing whether a decree is fair, reasonable and adequate").

In consideration of these factors, I find the Proposed Consent Decrees more than

9

adequate. The decrees resulted from extensive negotiations spanning nearly eighteen months. As evidenced by the Pre-Assessment Screen (Doc. 1-1) and the Performing Parties' Comments on the Pre-Assessment Screen (Doc. 1-2), the parties engaged in a meaningful process aimed at reaching a resolution which balanced the interests of the public against the uncertainty of litigation. There is no reason to suspect that these negotiations were anything but candid, open, and spirited; the Proposed Consent Decrees are procedurally fair.

Although the ultimate settlement amount is less than the market-based calculations of natural resource damages, Plaintiff reasonably determined that the settlement offers adequately compensated the public – especially when weighed against the costs and time of litigation and the relative strengths and weaknesses of the State's legal claims. *See* Unopposed Motion to Enter Consent Decrees (Doc. 4) at 13 (estimating that the State would incur hundreds of thousands of dollars in additional assessment and litigation costs if the case were to proceed to trial); Performing Parties' Comments on the Pre-Assessment Screen (Doc. 1-2) (specifically challenging the veracity of Plaintiff's underlying claims for Natural Resource Damages). In light of these concerns, the settlement amounts sufficiently compensate the public for reasonably certain natural resource damages resulting from contamination at the Lowry Landfill site; they are therefore substantively fair and equitable.

Finally, the Proposed Consent Decrees are consistent with the underlying policies and purposes of CERCLA, as evidenced by the creation of a Natural Resources Damage Recovery Fund specifically designed to compensate for the Natural Resource Damages resulting from the contamination at the Lowry Landfill site. Plaintiff's meaningful consideration of the public comments submitted in response to the publication of the Proposed Consent Decrees further

supports this finding. In its response to these comments, Plaintiff either adopted suggested changes it found consistent with the purpose of the settlement agreement or addressed concerns by citing to the extensive record of scientific monitoring and documentation at the Lowry Landfill.

## CONCLUSION

For the reasons stated above, I find the Proposed Consent Decrees, Docs. 2-3 and 4-5, fair, reasonable, consistent with the purpose of CERCLA, and in the public interest. Accordingly, Plaintiff's Unopposed Motion to Enter Consent Decrees (Doc. 4) is GRANTED and the Proposed Consent Decrees are APPROVED.

Dated: October 22, 2010

**/s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE